*Electronically Filed*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

| | |
|---|---|
| MARY RODGERS-ROUZIER, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) ) | Case No. 4:20-CV-00004-SEB-DML |
| v. ) ) ) | |
| AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, et. al. ) ) ) | |
| Defendants, ) ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY LITIGATION PENDING INDIVIDUAL ARBITRATION

Defendants, American Queen Steamboat Operating Company, LLC ("American Queen") and HMS Global Maritime, LLC ("HMS") (collectively "Defendants"), by counsel, hereby respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint or, in the alternative, to Stay Litigation Pending Individual Arbitration, and state as follows:

### INTRODUCTION[1]

### Plaintiff's Amended Complaint

On January 6, 2020, Plaintiff Mary Rodgers-Rouzier ("Plaintiff") filed a Complaint asserting violations of the Fair Labor Standards Act ("FLSA") against American Queen. (ECF No. 1). On June 8, 2020, Plaintiff filed an Amended Complaint asserting similar allegations (ECF No. 71). With a few exceptions, the Amended Complaint contained the same allegations

---

[1] For purposes of this Motion, Defendants accept Plaintiff's allegations in the Amended Complaint as true and bring this Motion based on the facts as plead by Plaintiff.

against American Queen as set forth in the Complaint.  The Amended Complaint added HMS as a defendant alleging that HMS was also Plaintiff's "employer" under the FLSA.  (*Id*. ¶¶10-11).

According to the Amended Complaint, Plaintiff is employed as a bartender by Defendants on one of their vessels.  (*Id*. at ¶ 2).  According to her Amended Complaint, during her weeks on the vessel, Plaintiff works seven days a week, and on average 12 hours or more per day.  (*Id*. at ¶ 28).  Plaintiff is paid a day rate of $52 for the work she performs and receives a percentage of a service fee charged to guests.  (*Id*. at ¶¶ 30-31).  Plaintiff is not paid overtime wages for the hours she alleges she works over 40 in each individual work week.  (*Id*. at ¶ 32).  Plaintiff claims that Defendants' classification of her as exempt from overtime compensation is a violation of the overtime provisions of the FLSA.  (*Id*. at ¶¶ 47-48).

Further, Plaintiff asserts this alleged violation of the FLSA on behalf of other "similarly situated" persons, which she defines in her Complaint as "all current and former bartenders, bar servers and bar staff, waiters, cooks and other kitchen employees, laundry attendants, and housekeepers ("Service Employees")."  (*Id*. at ¶¶ 1, 50). Plaintiff seeks to create an opt-in class of Service Employees employed by Defendants who were also paid a day rate within the prior three year period.  (*Id*. at ¶ 50).  Defendants deny that they misclassified Plaintiff or violated her rights in any manner.

Despite having agreed to resolve the disputes presented in this litigation via arbitration, Plaintiff filed a Complaint, and subsequently an Amended Complaint, in this Court on behalf of herself and "others similarly situated." As explained in more detail below, however, Plaintiff's claims are subject to mandatory individual arbitration outside this judicial District. Accordingly, the Court should dismiss Plaintiff's Amended Complaint in its entirety, and compel Plaintiff to arbitration.  At a minimum, the Court should dismiss the non-individual claims and stay adjudication of Plaintiff's individual claim pending adjudication of such claim in arbitration.

**Plaintiff Agreed to Submit All Disputes to Binding Arbitration**

Throughout Plaintiff's employment, Plaintiff has agreed that she would "settle any and all claims, disputes or controversies arising out of or relating to [her] candidacy for employment, employment and/or cessation of employment with [HMS and/or American Queen] … *exclusively* by final and binding *arbitration* before a single, neutral arbitrator." (*See*, Declaration of Christina Hobbs, attached as **Exhibit A** ¶6 and the Arbitration Agreement, §1, attached thereto as **Exhibit 1**) (emphasis in original). Other than claims for unemployment benefits, workers compensation, disability benefits, or claims under the National Labor Relations Act, all claims involving Plaintiff's employment are covered by the Arbitration Agreement. (**Exhibit 1, §**1). Similarly, in consideration of Plaintiff's agreement to enter the Arbitration Agreement, Defendants agreed to submit all disputes with Plaintiff, other than criminal matters and claims to enforce restrictive covenants, to arbitration, (*Id*. §5).

The Arbitration Agreement provides, in pertinent part, as follows:

1. **Employee Agrees to Arbitrate.**

In exchange for employment and/or continued employment, I ("Employee") agree that I will settle any and all claims, disputes or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with [HMS and/or American Queen] … *exclusively* by final and binding *arbitration* before a single, neutral Arbitrator. Claims for unemployment benefits, workers compensation or disability benefits or claims under the National Labor Relations Act are expressly excluded.

2. **Conduct of the Arbitration.**

The arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services or another arbitration service selected by the Company. The arbitrator may issue written directions as to the scope and timetable for discovery, and may make a summary dismissal of any claims submitted to arbitration. The arbitrator shall be charged to render a written opinion reciting the facts and the applicable law. I agree that I will pay half of the arbitration expenses, but no greater than an amount equal to the filing fee for a complaint in Federal Court in the Southern District of Indiana. Unless a majority of witnesses reside elsewhere, I agree that any arbitration will be held in the county and state of my last employment with the Company. If I am

employed outside the United States, the arbitration will be held in the county and state of the Company headquarters.

…

**6.      Miscellaneous.**

This Agreement and the applicability/construction of any arbitration decision shall be governed by the Federal Arbitration Act. The provisions of this Agreement shall be severable. If any portion of this Agreement is held to be invalid or unenforceable, it shall not affect the remaining portions of this Agreement. This Agreement may be modified by a court or an arbitrator to render it enforceable. In addition to interpreting this Agreement, the Arbitrator's authority shall be limited to deciding claims, counterclaims and defenses for arbitration. This Agreement represents the entire understanding of the parties with respect to its subject matter and supersedes any prior agreements. There are no oral understandings about the subject matter of this Agreement other than contained herein. This Agreement may be assigned by the Company. No amendment to this Agreement shall be effective unless in writing and signed by all parties. The headings in this Agreement are for convenience only, and do not govern. …

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

(*Id.*, §§3 and 6).[2]

Again, Defendants deny that they violated the FLSA or Plaintiff's rights in any manner. However, to the extent Plaintiff seeks to pursue her claim, the mandatory arbitration provision agreed to by her prohibits her from pursuing her claim in this Court. Moreover, because the Arbitration Agreement does not provide for the resolution of consolidated disputes this Court

---

[2] Nearly all of American Queen's employees, including the Service Employees, have entered into similar arbitration agreements with American Queen. (Hobbs Declaration ¶7).

4

should dismiss the collective action claims in the Amended Complaint and compel Plaintiff to pursue her claims through individual arbitration.

## ARGUMENT AND AUTHORITIES

This Court should dismiss Plaintiff's Amended Complaint because Plaintiff's claims against Defendants are subject to binding arbitration in a location outside this District. Specifically, the Arbitration Agreement provides for arbitration in the county and state of Plaintiff's last employment with American Queen, which appears to be Memphis, Shelby County, Tennessee. (Amended Complaint ¶3). At a minimum, this Court must stay Plaintiff's Amended Complaint pending the completion of arbitration between the parties.

Despite the clear language of the Arbitration Agreement, Plaintiff decided to bring this collective action in this forum instead of submitting her claims, individually, to arbitration as agreed upon by Plaintiff throughout her continued employment at American Queen. By doing so, Plaintiff defies both the clear intent of the parties as expressed in the Arbitration Agreement, as well as the clear policy of the courts favoring alternative means of resolving disputes. Accordingly, this Court should dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) and compel individual arbitration.

**I.   Standard of Review.**

The Court should dismiss the Amended Complaint and order Plaintiff to arbitrate her claim on an individual basis *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544-45 (7th Cir. 2014) ("An arbitration clause is simply a type of forum-selection clause . . . and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3).") (citations omitted). This is particularly appropriate where, as here, the arbitration will be held outside the District. *Continental Cas. Co. v. Am, Nat. Ins. Co.,* 417 F.3d 727,733 (7th Cir. 2005) (dismissal under Fed. R. Civ. P. 12(b)(3) appropriate where arbitration to be performed in another district).

5

**II.     Plaintiff Expressly Agreed to Arbitrate Any Dispute Arising Out of or Relating to Her Employment**

The FAA encourages parties to a dispute to resolve their differences with a minimum amount of judicial involvement. *See*, *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974). The FAA provides, in pertinent part, that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA recognizes a strong policy favoring arbitration agreements, and any doubts regarding the arbitrability of an issue are to be resolved in favor of arbitration. *Kreimer v. Delta Faucet Co.*, 2000 WL 962817, \*2, \*5 (S.D. Ind. 2000). "The Seventh Circuit has reiterated that courts should not presume, absent concrete proof to the contrary, that arbitration systems will be unfair or biased." *DeGroff v. MascoTech Forming Technologies-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 902 (N.D. Ind. 2001); *Kreimer*, 2000 WL 962817 at \*9 ("[T]he Seventh Circuit has noted that there is no question the [FAA …] has established a federal policy favoring arbitration and that the courts are required to rigorously enforce arbitration agreements.").

Under the FAA, an agreement to arbitrate must meet two basic requirements: (1) it must be a valid written agreement; and (2) it must be a contract involving commerce. 9 U.S.C. § 2; *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) ("Section 2 of the [FAA] … declares that a written agreement to arbitrate in any contract involving interstate commerce … shall be valid, irrevocable and enforceable") (quoting 9 U.S.C. § 2) (internal quotes omitted). The Arbitration Agreement signed by Plaintiff meets both of these requirements.

### A. The Arbitration Agreement is a Valid, Enforceable Agreement under the FAA.

To determine whether a valid agreement has been formed under the FAA, courts must examine: (1) whether the parties have entered into an agreement that is binding under applicable state law; (2) whether the claims asserted fall within the scope of the arbitration agreement; and (3) whether the moving party has somehow waived its right to compel arbitration. *DeGroff*, 179 F. Supp. 2d at 902. The arbitration agreement between Plaintiff and Defendants is a valid and enforceable agreement under either Indiana or Tennessee law, the arbitration procedures adopted by Defendants provide the exclusive remedy for the claims that Plaintiff has asserted in her Amended Complaint, and Defendants have not waived their right to compel arbitration. Consequently, Plaintiff's Amended Complaint must be dismissed and she must be compelled to utilize the procedures set forth in the Arbitration Agreement should she desire to continue pursuing her claim against Defendants.

#### 1. The Parties Have Entered Into A Binding Agreement.

An arbitration agreement is enforceable if it is a valid contract. *Kreimer*, 2000 WL 962817 at *2; *Ortiz v. Winona Mem'l Hosp.*, 2003 WL 21696524, *4 (S.D. Ind. 2003) ("An arbitration agreement is treated like any other contract."). Here, whether the Arbitration Agreement is interpreted under Indiana law, where Defendants have their principal place of business, or Tennessee law, where Plaintiff alleges she resides and last worked for American Queen, the Arbitration Agreement is enforceable. Under either Indiana or Tennessee law there are three elements of a contract: offer, acceptance and consideration. *See*, *Kreimer*, 2000 WL 962817 at *2; *Ace Design Grp., Inc. v. Greater Christ Temple Church, Inc.*, 2016 WL 7166408, at *7 (Tenn. Ct. App. 2016).

Consideration for Plaintiff's agreement to arbitrate can be either a benefit to Plaintiff or a detriment to Defendants. *Kreimer,* 2000 WL 962817 at *2. In *DeGroff*, the plaintiff signed an

7

arbitration agreement when she applied for a job with the employer. 179 F. Supp. 2d at 899. By signing that agreement, plaintiff agreed to be bound by the employer's corporate dispute resolution policy. *Id*. Under the policy, all claims arising out of plaintiff's employment or termination were to be resolved through mediation and, if necessary, arbitration. *Id*. Despite this agreement, plaintiff brought suit alleging that she was constructively discharged in violation of Title VII. *Id*. at 900. The employer moved to dismiss plaintiff's Title VII complaint and compel arbitration. *Id*.

Granting the employer's motion, the *DeGroff* Court held that the plaintiff was bound by the arbitration agreement contained in her initial employment application. *Id*. at 903-06. In so holding, the Court stated, "contract terms may be incorporated by reference to a separate document … and consideration for the promise in one instrument may be contained in another." *Id*. at 905 (internal quotations omitted). There, plaintiff's application specifically incorporated by reference the corporate dispute resolution policy, which in turn contained the employer's promise to be bound by the arbitrator's decision. Such a promise by an employer constitutes adequate consideration under Indiana and Tennessee law. *Kreimer*, 2000 WL 962817 at \*3; *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 358 (Tenn. Ct. App. 2001) (consideration found where both parties to arbitration agreement agreed to be bound and both agreed to arbitrate disputes).

The Arbitration Agreement in the present case meets all requirements under both Indiana and Tennessee law. Plaintiff accepted the Arbitration Agreement when offered by American Queen. The parties' mutual agreement to be bound by the arbitrator's decision constitutes sufficient consideration. Both *DeGroff* and *Pyburn* make clear, under Indiana and Tennessee law, consideration can be found by way of Defendants' waiver of their right to seek judicial determination of a raised claim. *See also*, *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (holding that employer's promise to be bound by the arbitration process itself

serves as mutual consideration); *Abbot v. Lexford Apartment Services, Inc.*, 2002 WL 1800320, *4 (S.D. Ind. 2002) ("Often consideration for one party's promise to arbitrate is the other party's promise to do the same."). Therefore, the parties have reached a valid, binding agreement under either Indiana or Tennessee law.

## 2. Plaintiff's Claim is Covered by the Agreement to Arbitrate.

Having established that a valid contract exists between Plaintiff and Defendants, the Court then must decide whether the claim asserted by Plaintiff against Defendants falls within the scope of the contract. It is well-settled that parties may agree to arbitrate employment claims. Indeed, the Seventh Circuit conclusively has found a clear congressional intent to encourage arbitration of employment claims. *Koveleskie v. SBS Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir. 1999). Here, Plaintiff's Complaint alleges that Defendants have violated the FLSA by inappropriately classifying her as exempt from overtime. The Arbitration Agreement executed by Plaintiff specifically states Plaintiff will "settle any and all claims, disputes or controversies arising out of or relating to [her] … employment … with [HMS and/or American Queen] … *exclusively* by final and binding *arbitration* before a single, neutral arbitrator." (*See*, Exhibit 1 to Exhibit A, emphasis in original). As such, Plaintiff's claim, which involves a dispute concerning her employment with American Queen, is unmistakably arbitrable under the agreement. *See, Sharif v. Wellness Int'l Network Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("The [FAA] … states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied).

## 3. Defendants Did Not Waive their Right to Demand Arbitration.

To determine whether a moving party has waived its right to compel arbitration, this Court must examine whether the party "has acted inconsistently with the right to arbitrate." *DeGroff*, 179 F. Supp. 2d at 912. (Citations omitted). That is not the case here. American Queen filed its Motion to Dismiss or Stay (ECF No. 16) within the deadline to file a responsive

9

pleading to the Complaint and before submitting any answer. *Id*. at 913. ("Since [defendant] filed [its] motion to compel arbitration a mere two months after this lawsuit was filed and before submitting any answer, we find that there has been no delay, and thus no waiver."). Likewise, Defendants file this motion to dismiss/stay the Amended Complaint within the deadline to file their responsive pleading to the Amended Complaint and before submitting any answer. Given the foregoing, Defendants have not waived their right to demand arbitration.

      **B.**    **The Arbitration Agreement is a Transaction "Involving Commerce"**

The Arbitration Agreement is a "contract evidencing a transaction involving commerce" within the meaning of Section 2 of the FAA. Notably, the Supreme Court has described the term "involving commerce" to be read exceedingly broad, with Congress attempting to use as much of its powers as it could. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) (concluding that the phrase "involving commerce: in Section 2 of the FAA "is broad and is indeed the functional equivalent of 'affecting [commerce]'"). Here, Plaintiff worked on an American Queen vessel in multiple States. Accordingly, as a matter of law, the Arbitration Agreement is a "contract evidencing a transaction involving commerce" within the meaning of the FAA. As a result of the Arbitration Agreement, jurisdiction was removed from this Court. Therefore, Plaintiff's Amended Complaint should be dismissed and Plaintiff should be compelled to arbitrate her claim against Defendants in accordance with the terms of their agreement.

      **C.**    **Plaintiff May Only Arbitrate Her Individual Claim**

In addition to asserting that Defendants have violated the FLSA with respect to her personal wages, Plaintiff also alleges violations on behalf of other "similarly situated" employees[3] and, may therefore, attempt to bring a collective action on their behalf through

---

[3] As noted above, the Service Employees referenced by Plaintiff have similar arbitration agreements to Plaintiff. See *supra.* fn. 2.

arbitration. However, the question of whether an arbitration agreement allows for collective arbitration is a "gateway" matter that is to be decided by the court, not an arbitrator. *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018). In other words, this Court, when compelling Plaintiff to pursue her claim in arbitration, must also determine if Plaintiff may bring a class or collective action. Simply stated, Plaintiff may not.

Pursuant to controlling authority, a plaintiff may only pursue individual claims in arbitration if the arbitration agreement is silent on the matter. *Champ v. Siegel*, 55 F.3d 269, 275 (7th Cir 1995); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") In *Champ*, the parties' arbitration agreement made no mention of class or collective arbitration. *Id*. Because the agreement was silent, the Court determined that "to read such a term into the parties' agreement would "disrupt [ ] the negotiated risk/benefit allocation and direct[ ] [the parties] to proceed with a different sort of arbitration." *Id.* (Citation omitted).

Accordingly, as adopted by several other circuits, the Seventh Circuit held that Section 4 of the FAA "forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter." *Id.*; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417, (2019) ("Although parties are free to authorize arbitrators to resolve such questions, we will not conclude that they have done so based on 'silence *or* ambiguity' in their agreement, because 'doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'"); *Stolt-Nielsen S.A.*, 559 U.S. at 687 ("We think that the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.").

While this result may seem inefficient, "the Supreme Court has repeatedly emphasized that we must rigorously enforce the parties' agreement as they wrote it, 'even if the result is 'piece-meal' litigation.'" *Id.* quoting, *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221 (1985). Here, the Arbitration Agreement is silent as to whether class or collective arbitrations are permitted. Accordingly, this Court must order Plaintiff's claims, and only Plaintiff's claims, to proceed in arbitration.

## **CONCLUSION**

For the reasons set forth above, Defendants, American Queen Steamboat Operating Company, LLC and HMS Global Maritime, LLC respectfully request that Plaintiff's action against it be dismissed and that it order Plaintiff to arbitrate on an individual (non-class and non-collective) basis in accordance with the parties' agreement. Alternatively, Defendants request the Court to stay Plaintiff's individual claims pending resolution of the claims in individual arbitration pursuant to the parties' Arbitration Agreement.

Respectfully submitted,

*/s/Dennis D. Murrell*
Dennis D. Murrell
Augustus S. Herbert
Loren T. Prizant
**MIDDLETON REUTLINGER**
401 South 4th Street
Suite 2600
Louisville, KY 40202
(502) 584-1135
(502) 561-0442 (fax)
dmurrell@middletonlaw.com
aherbert@middletonlaw.com
lprizant@middletonlaw.com

AND

Roert P. Herre  
Bobby R. Miller  
Kent Ryan (Pro Hac Vice to be filed)  
**MILLER HAHN, PLLC**  
2660 West Park Drive, Suite 2  
Paducah, KY 42001  
rherre@millerlaw-firm.com  
bmiller@millerlaw-firm.com  
kryan@millerlaw-firm.com  

Counsel for Defendants

## **CERTIFICATE OF SERVICE**

It is hereby certified that the foregoing was filed this __*30th*__ day of June, 2020, via the Court's CM/ECF system and a true copy of same was electronically served on the following:

Douglas M. Werman  
Maureen A. Salas  
Sarah J. Arendt  
Michael Tresnowski  
**WERMAN SALAS P.C.**  
77 W. Washington Street, Suite 1402  
Chicago, IL 60602  
dwerman@flsalaw.com  
msalas@flsalaw.com  
sarendt@flsalaw.com  
mtresnowski@flsalaw.com  
Counsel for Plaintiff

/s/ Dennis D. Murrell  
Counsel for Defendant
