UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MARY RODGERS-ROUZIER on behalf of herself and all others similarly situated,<br><br>                  Plaintiff,<br><br>                  v.<br><br>AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, HMS GLOBAL MARITIME LLC,<br><br>                  Defendants. | No. 4:20-cv-00004-SEB-DML |

**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR ALTERNATIVELY TO STAY LITIGATION PENDING INDIVIDUAL ARBITRATION**

On June 8, 2020, Plaintiff Mary Rodgers-Rouzier, individually and on behalf of those similarly situated, filed her Amended Complaint, alleging that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq.* ("FLSA"), by failing to pay her for the hours she worked in excess of forty per week. Now before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Stay Litigation Pending Individual Arbitration. [Dkt. 75]. For the reasons set forth herein, this motion is **denied.**[1]

---

[1] Defendant American Queen Steamboat Operating Company, LLC's Motion to Dismiss Complaint or Stay Litigation, [Dkt. 16], filed prior to the submission of Plaintiff's Amended Complaint, is **denied as moot.**

1

## Background

**I.     Ms. Rodgers-Rouzier's Employment with Defendants**

Ms. Rodger-Rouzier's Amended Complaint alleges the following facts, which we accept as true in this context.

Defendants, owners and operators of a river cruise line, oversee the voyages of multiple cruise boats traveling along various rivers in the United States, including the Mississippi, Tennessee, and Ohio Rivers. Ms. Rodgers-Rouzier has been employed by Defendants as a bartender since February 2015. In this role, Ms. Rodgers-Rouzier's primary duties include preparing and serving drinks to guests and maintaining a clean and fully stocked bar area. She is charged with knowing Defendants' bar menu, drink recipes, and serving procedures. In sum, Ms. Rodgers-Rouzier's "job duties as a bartender for Defendants are essentially the same as a bartender who works in a bar or restaurant on land." [Am. Comp. ¶ 37]. She is not responsible for the maintenance, upkeep, or safety of any equipment related to the operations of the cruise boats, nor does she provide any engineering, or docketing support to the boats or any safety-related services to guests.

In her position as a bartender, Ms. Rodgers-Rouzier works six-week tours on one of Defendants' vessels, followed by two weeks off. During her weeks on board the vessel, Ms. Rodgers-Rouzier works seven days a week, averaging twelve hours of work per day. Her compensation includes a daily rate as well as a percentage of a service fee charged to guests. Ms. Rodgers-Rouzier is not paid overtime for any hours she works during a week in excess of forty.

Ms. Rodgers-Rouzier's lawsuit alleges that Defendants have misclassified her as exempt from overtime compensation, in violation of the FLSA's overtime provisions. She also advances this alleged violation of the FLSA on behalf of other "similarly situated persons," including "all current employees, laundry attendants, and housekeepers."

## II.    The Parties' Arbitration Agreement

As a condition of her employment, Ms. Rodgers-Rouzier entered into an employment agreement with Defendants, which contained various provisions providing for arbitration of disputes between Ms. Rodgers-Rouzier and Defendants ("Arbitration Agreement") [Dkt. 76-1, Exhibit 1]. The Arbitration Agreement states, in pertinent part, as follows:

<u>Employee Agrees to Arbitrate.</u>

1. In exchange for employment and/or continued employment, I ("Employee") agree that I will settle any and all claims, disputes or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with [HMS and/or American Queen] … exclusively by final and binding arbitration before a single, neutral Arbitrator.  Claims for unemployment benefits, workers compensation or disability benefits or claims under the National Labor Relations Act are expressly excluded.

    [ . . . ]

6. <u>Miscellaneous</u>

    This Agreement and the applicability/construction of any arbitration decision shall be governed by the Federal Arbitration Act.  The provisions of this Agreement shall be severable.  If any portion of this Agreement is held to be invalid or unenforceable, it shall not affect the remaining portions of this Agreement.  This Agreement may be modified by a court or an arbitrator to render it enforceable.

    [ . . . ]

[Dkt. 76-1, Exhibit 1].

Defendants contend that the Arbitration Agreement prohibits Ms. Rodgers-Rouzier from pursuing her FLSA claims in this court. Moreover, because the Arbitration Agreement does not specifically include the resolution of consolidated disputes, Defendants seek the dismissal of the collective action claims set out in the Amended Complaint and an order to compel Plaintiff to pursue arbitration individually. Alternatively, Defendants request an order staying Plaintiffs' collective action claims pending the completion of Ms. Rodgers-Rouzier's personal arbitration claims.

## Analysis

### I.  Standard of Review

"An arbitration clause is simply a type of forum-selection clause . . . [A] motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)." *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014); *see also Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 806 (7th Cir. 2011) ("[W]e have held that a motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).") (internal quotations omitted).

In ruling on Defendants' motion, we accept as true the well-pled allegations in the complaint. *Faulkenberg*, 637 F. 3d at 806. However, we are "not obligated to limit [our] consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Id.* at 809-10. It is thus appropriate for

4

the court to consider the evidence that the parties have submitted in conjunction with their legal arguments, including the Arbitration Agreement. *Id.*

## II.     Discussion

Federal policy favors the enforcement of private arbitration agreements. *Fields v. Howe*, 2002 WL 418011, at *1 (S.D. Ind. Mar. 14, 2002); *Brown v. Surety Fin. Serv., Inc.*, 2000 WL 528631, *1 (N.D.Ill. March 24, 2000) (*citing Moses H. Cone Memorial Hosp. v. Mercury Const*. Corp., 460 U.S. 1, 24 (1983)). Under such policy, the Federal Arbitration Act (FAA), which governs the parties' Arbitration Agreement here, "authorizes a district court to compel arbitration of any issue covered by a valid and enforceable arbitration agreement." *Id.* (citing 9 U.S.C. § 4). An agreement to arbitrate "must be enforced 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir.1997) (quoting 9 U.S.C. § 2); *see also Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("The Federal Arbitration Act, however, states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied.")

Notwithstanding this "liberal federal policy favoring arbitration agreements," Congress has carved out from the FAA's coverage certain types of employment contracts, including "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 534 (2019) (quoting 9 U.S.C. § 1). Accordingly, prior to ordering arbitration, the Court must determine whether any of the Section 1 exceptions apply. *Id.*

Ms. Rodgers-Rouzier maintains that the Court cannot compel her to arbitrate, given that two of the categories of exempt employees enumerated in Section 1 of the FAA apply to her. Specifically, she represents that she is a "seaman" under the FAA as well as a "transportation worker." We agree that Ms. Rodgers-Rouzier is a "seaman" for purposes of the FAA and thus cannot be compelled to arbitrate her claims pursuant to the exclusions listed in this statute.

In deciding whether Ms. Rogers-Rouzier is a "seaman," we consider the membership entailed in this category. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020). That determination is not a straightforward matter, however, largely because the FAA is silent as to who qualifies as a "seaman." In addition, there is a dearth of case law within our Circuit defining this term. Our research discloses that this precise issue of statutory interpretation is likely one of first impression within the Seventh Circuit.

Defendants advance no argument as to the correct interpretation of this term, though they assert in conclusive fashion that Ms. Rodgers-Rouzier is not a seaman for FAA purposes.

Ms. Rogers-Rouzier proffers an analogous statute, the Jones Act,[2] as the source of a definition of the term "seamen." Of the few courts that have confronted this statutory interpretation issue, the Jones Act has been relied upon for a definition of the category of

---

[2] "The Jones Act creates a federal negligence claim for any seaman injured in the course of employment. 46 U.S.C. app. § 688(a). Congress enacted the Jones Act to provide seamen with heightened legal protection because of their exposure to perils of the sea." *Howard v. S. Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854, 856 (7th Cir. 2004) (internal quotations omitted).

6

"seamen." *See, e.g., Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 395 (5th Cir. 2003) (rejecting argument that "seamen" had different meanings under the FAA and the Jones Act); *Veliz v. Cintas Corp.*, 2004 WL 2452851, at *4 (N.D. Cal. Apr. 5, 2004), modified on other grounds on reconsideration, 2005 WL 1048699 (N.D. Cal. May 4, 2005) ("Although the FAA does not define 'seamen,' courts have relied on judicial interpretation of the Jones Act, such that a seaman under the Jones Act is also a seaman for the purposes of exemption under § 1 of the FAA."); *Owen v. W. Travel, Inc.*, 2003 WL 25961848, at *7 (W.D. Wash. Dec. 12, 2003) ("[T]his court . . . is convinced that construction of "seaman" under the FAA exemption should be akin to its construction under the Jones Act[.]"). Though the Seventh Circuit has not expressly addressed this issue, it has acknowledged that the FAA would be inapplicable to an individual who qualified as a seaman under the Jones Act. *See Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 842 (7th Cir. 2009).

With this guidance, we hold that Ms. Rodgers-Rouzier is a "seaman" as defined in the Jones Act, which definition we shall import in determining whether a FAA seaman exception exists.

However, Congress has left the term "seamen" undefined even in the Jones Act, relying on "the courts to define the central term." *Howard*, 364 F.3d at 856. The Supreme Court has provided helpful guidance, noting that the key to who qualifies as s seaman turns on his/her "employment-related connection to a vessel in navigation." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991). That determination is tied to two elements: "The worker's duties must contribute to the function of the vessel or to the

accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 347 (1995).

Whether Ms. Rodgers-Rouzier, whose duties as a bartender on Defendants' river cruise boats mirror those of any bartender on land, can satisfy these elements is a novel question of law; only two courts, the Western District of Washington and the Northern District of Illinois, appear to have addressed and resolved this precise question.

In *Owen v. Travel Inc.*, plaintiffs, comprised of "cooks, bartenders, and customer service representatives," alleged that Defendants, cruise ship owners and operators, violated the FLSA by failing to compensate plaintiffs for the hours they worked per week in excess of forty. 2003 WL 25961848, at *1, 7. As in the case before us, Defendants sought to compel arbitration pursuant to the FAA, and plaintiffs rejoined that they were outside the FAA's reach on the grounds that they were "seamen." Adopting the Supreme Court's interpretation of "seamen," the Western District of Washington agreed with plaintiffs that they were "seamen" under the Jones Act and, correspondingly, the FAA. *Id.* at *7, 8.

The *Owen* Court determined that the function of the defendant's cruise ships was to provide transportation and entertainment—much like Defendants' river boats here, says Ms. Rodgers-Rouzier. The *Owen* Court reasoned that plaintiffs contributed to this function "by providing food, drink and customer services to the vessels' passengers," thus satisfying the first *Chandris* prong. *Id.* at *8. The Court also found that the plaintiffs' connection to a "vessel in navigation" was substantial in both nature and duration, given

8

that their duties were discharged aboard the cruise ship on which they stayed for the duration of the ship's time in navigation. *See id.* at *7-8.

The Northern District of Illinois reached a similar result in *Wiora v. Harrah's Illinois Corp.*. There, plaintiff, a waitress aboard a casino-style river boat, sued her employer under the Jones Act. 68 F. Supp. 2d 988 (N.D. Ill. 1999). At issue, in part, was whether plaintiff qualified as a "seaman" for Jones Act purposes. As in *Owen,* the *Wiora* Court found that she satisfied the elements of a "seaman": first, she clearly had an employment-related connection to the riverboat casino, and, second, this connection was substantial in both nature and duration given that she was a "full-time employee on [the] riverboat casino and she played an integral role in the service of customers on the boat." *Id.* at 992.

Though Ms. Rodgers-Rouzier has directed us to the decision in *Owen*, requesting that we adopt its analysis, Defendants failed to address this case in anyway. Defendants also failed to address *Wiora* or any other applicable, relevant legal authorities analyzing this issue, including making no attempt to distinguish the facts, the rationales, or the legal conclusions of *Owen* or *Wiora* from those before us. These holdings are consistent with dicta from the Seventh Circuit indicating that bartenders, such as Ms. Rodgers-Rouzier, would qualify as seamen under the Jones Act. *Harkins v. Riverboat Servs., Inc*., 385 F.3d 1099, 1103 (7th Cir. 2004) (noting that "a waiter employed on a cruise ship . . . might be exposed to some of the hazards inherent in working on a ship, and this might justify

9

classifying him as a seaman for the Jones Act").[3] For all these reasons, we adopt the reasoning and conclusions of the courts in *Owen* and *Wiora.*

Thus, we hold that Ms. Rodgers-Rouzier's employment qualifies her as a "seaman." Defendants' cruises provide entertainment and transportation to those aboard the boats and, to staff its cruises, Defendants employ bartenders, waiters, and kitchen staff. Ms. Rodgers-Rouzier's duties as a bartender contribute to the entertainment function provided for passengers by the cruise boats. This satisfies the first *Chandris* element. Additionally, because she performs her duties aboard the cruise boats, on which she remains and lives for six-week intervals while the boats navigate various bodies of water,[4] her connection to these vessels is substantial both in nature and duration.

Defendants also contend that Ms. Rogers-Rouzier's asserted seaman status "contradicts" the allegations in her complaint, to wit, that her responsibilities are comparable to any bartender on land. This comment might carry more weight if it had been tied to some attempt by Defendants to interpret the term "seaman" under the FAA. Moreover, as we have found previously, her allegations are consistent with the definition and use of the term "seamen" under the Jones Act and the FAA. For all of these reasons,

---

[3] Numerous other courts have presumed workers such as Ms. Rodgers-Rouzier to be Jones Act "seamen" without any analysis of the elements. *See, e.g., Gifford v. Am. River Transp. Co.*, 833 F. Supp. 2d 684, 689 (W.D. Ky. 2011); *Plesha v. M/V INSPIRATION*, 419 F. Supp. 2d 67, 75 (D.P.R. 2006). At least one court, in resolving the defendant/employer's motion for summary judgment on its employee/riverboat casino bartender's Jones Act claim, found that a reasonable juror could conclude that the employee satisfied the *Chandris* elements. *Lara v. Harveys Iowa Mgmt. Co*., 109 F. Supp. 2d 1031, 1037 (S.D. Iowa 2000) (noting that, in the context of resolving a Jones Act claim, determining who is a seaman is a mixed question of law and fact).

[4] There is no dispute between the parties that Defendants' boats, while they are cruising, qualify as "vessels in navigation," cruising rivers rather than seas. *See Johnson v. John F. Beasley Const. Co.*, 742 F.2d 1054, 1063 (7th Cir. 1984).

we hold that Ms. Rodgers-Rouzier qualifies as a seaman for purposes of Section 1 of the FAA,[5] and thus cannot be compelled to arbitrate under this statute.[6]

We briefly address one final contention by Defendants. They suggest that Ms. Rodgers-Rouzier cannot claim to be a seaman for FAA purposes without also conceding to be a seaman for FLSA purposes. Because seamen are exempt from the FLSA, 29 U.S.C § 312(b)(6), finding that Ms. Rodgers-Rouzier is a seaman under the FAA would be fatal to her FLSA claim, according to Defendants.

We need not determine definitively at this juncture whether Ms. Rodgers-Rouzier is a seaman under the FLSA, since the Court is not required to make such a determination at the outset of litigation, and Defendants have not sought the dismissal of Ms. Rodgers-Rouzier's complaint on the grounds that the FLSA seamen exemption applies. We shall

---

[5] Having determined that Ms. Rodgers-Rouzier is a seaman under the FAA, we need not review her contention that she is also exempt from arbitration on the grounds that she is a "transportation worker."

[6] We deny Defendants' request to submit additional authority because we are in agreement with Plaintiffs that their proffered authority is not tethered to arguments made by Defendants in their briefing on their motion to compel; rather, Defendants, for the first time, argue in their motion to submit additional authority that Ms. Rodgers-Rouzier may be compelled to arbitrate under state law if we determine she is beyond the reach of the FAA. Nowhere in Defendants' motion to compel and the corresponding briefing do Defendants suggest that they are moving to compel arbitration under state law. Defendants' briefing also omits any reference to which state's arbitration policy would govern here as well as any discussion of whether and to what extent such policy compels arbitration. We reject Defendants' implication that their arguments regarding the validity of Ms. Rodgers-Rouzier's employment contract for the purposes of deciding whether arbitration should be compelled under the FAA address the distinct legal issue of whether state law compels arbitration in the circumstances presented. The parties' acknowledgments of this latter issue in their disputes regarding Defendants' entitlement to submit additional authority and Ms. Rodgers-Rouzier's entitlement to submit a surreply do not suffice to create a justiciable issue as to whether Ms. Rodgers-Rouzier must be compelled to arbitrate under state law. *See Atwood v. Rent-A-Ctr. E., Inc.*, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016); *Sherwood v. Marquette Transp Co.*, LLC, 2010 WL 99688, at *1 (S.D. Ill. Jan. 7, 2010). Having denied Defendants' request to submit additional authority, we also deny as moot Plaintiffs' request to submit a surreply.

reserve for another day this argument by Defendants, except to the note that the Seventh Circuit has ruled that "the classification of an employee as a seaman under one statute or admiralty doctrine does not necessarily require that he be so classified under another one which might have a different purpose." *Harkins*, 385 F. 3d at 1103.

## CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or in the Alternative, to Stay Litigation Pending Individual Arbitration, [Dkt. 75], **is denied.** Defendant American Queen Steamboat Operating Company, LLC's Motion to Dismiss Complaint or Stay Litigation, [Dkt. 16], is **denied is moot.** Defendants' Motion to Submit Additional Authority, [Dkt. 89], as well as Plaintiff's Motion for Leave to File Surreply, [Dkt. 92], are both **denied.**

IT IS SO ORDERED.

Date: 3/10/2021

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Sarah Arendt
WERMAN SALAS P.C.
sarendt@flsalaw.com

Augustus S. Herbert
MIDDLETON REUTLINGER
aherbert@middreut.com

Robert P. Herre
rpherre@aol.com

Bobby R. Miller, Jr.
MILLER HAHN, PLLC
bmiller@millerlaw-firm.com

Dennis D. Murrell
MIDDLETON & REUTLINGER
dmurrell@middletonlaw.com

Loren T. Prizant
MIDDLETON REUTLINGER
lprizant@middletonlaw.com

Maureen A. Salas
WERMAN SALAS P.C.
msalas@flsalaw.com

Michael Tresnowski
WERMAN SALAS P.C.
mtresnowski@flsalaw.com

Douglas M. Werman
WERMAN SALAS PC
dwerman@flsalaw.com