UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| MARY RODGERS-ROUZIER on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:20-cv-00004-SEB-KMB |
| AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, HMS GLOBAL MARITIME LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION AND DISMISSING THE CASE**

Now before the Court is Defendants' Renewed Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Stay Litigation Pending Individual Arbitration.[1] Defendants have waived their argument that the case should be dismissed for improper venue under Rule 12(b)(3), but they have not waived their contractual right to compel arbitration under Indiana law. We grant Defendants' motion to compel arbitration under Indiana law, finding that Indiana precedent warrants a dismissal when, as here, all issues are required to be submitted to arbitration. Accordingly, we must dismiss the case but do so without prejudice.

---

[1] Also pending before the Court are Defendants' Submission Establishing the Existence and Validity of Arbitration Agreements [Docket No. 144], Plaintiff's Motion for Equitable Tolling [Docket No. 148], and Plaintiff's Motion for Leave to File a Surreply [Docket No. 155]. Because we ultimately grant the motion to compel arbitration, and subsequently dismiss this case without prejudice, we deny these three motions as moot.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 8, 2020, Plaintiff Mary Rodgers-Rouzier, individually and on behalf of those similarly situated, filed her Amended Complaint, alleging that Defendants American Queen Steamboat Operating Company, LLC, and HMS Global Maritime LLC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.*, by failing to pay her for the hours she worked in excess of forty per week. As the Court has previously found, Ms. Rodgers-Rouzier's Amended Complaint alleges the following facts, which we accept as true at this juncture:

> Defendants, owners and operators of a river cruise line, oversee the voyages of multiple cruise boats traveling along various rivers in the United States, including the Mississippi, Tennessee, and Ohio Rivers. Ms. Rodgers-Rouzier has been employed by Defendants as a bartender since February 2015. In this role, Ms. Rodgers-Rouzier's primary duties include preparing and serving drinks to guests and maintaining a clean and fully stocked bar area. She is charged with knowing Defendants' bar menu, drink recipes, and serving procedures. In sum, Ms. Rodgers-Rouzier's "job duties as a bartender for Defendants are essentially the same as a bartender who works in a bar or restaurant on land." She is not responsible for the maintenance, upkeep, or safety of any equipment related to the operations of the cruise boats, nor does she provide any engineering, or docketing support to the boats or any safety-related services to guests.

> In her position as a bartender, Ms. Rodgers-Rouzier works six-week tours on one of Defendants' vessels, followed by two weeks off. During her weeks on board the vessel, Ms. Rodgers-Rouzier works seven days a week, averaging twelve hours of work per day. Her compensation includes a daily rate as well as a percentage of a service fee charged to guests. Ms. Rodgers-Rouzier is not paid overtime for any hours she works during a week in excess of forty.

> Ms. Rodgers-Rouzier's lawsuit alleges that Defendants have misclassified her as exempt from overtime compensation, in violation of the FLSA's overtime provisions. She also advances this alleged violation of the FLSA on behalf of other "similarly situated persons," including "all current employees, laundry attendants, and housekeepers."

Docket No. 97, at 2−3. "As a condition of her employment, Ms. Rodgers-Rouzier entered into an employment agreement with Defendants, which contained various provisions providing for arbitration of disputes between Ms. Rodgers-Rouzier and Defendants." *Id.* at 3. The Arbitration Agreement states, in pertinent part, as follows:

<u>Employee Agrees to Arbitrate.</u>

1. In exchange for employment and/or continued employment, I ("Employee") agree that I will settle any and all claims, disputes or controversies arising out of or relating to my candidacy for employment, employment and/or cessation of employment with [HMS and/or American Queen] … exclusively by final and binding arbitration before a single, neutral Arbitrator. Claims for unemployment benefits, workers compensation or disability benefits or claims under the National Labor Relations Act are expressly excluded.

2. <u>Conduct of the Arbitration.</u>

    The arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services or another arbitration service selected by the Company.

    [ . . . ]

4. <u>Arbitration brought by Employee within Six Months.</u>

    I further agree not to commence any claim hereunder more than six (6) months after the date I knew or should have known of the facts giving rise to the claim, and I agree to waive any statute of limitations to the contrary.

    [ . . . ]

5. <u>Company Agrees to Arbitrate.</u>

    As additional consideration to this Agreement, excluding criminal matters and claims to enforce restrictive covenants (non-competition, non-

3

> solicitation, confidentiality, non-pirating, etc.) with the Employee, the
> Company agrees to submit any and all claims against the Employee to
> arbitration under the terms contained in Paragraphs 1 through 4 above.

> 6. <u>Miscellaneous</u>

> This Agreement and the applicability/construction of any arbitration decision
> shall be governed by the Federal Arbitration Act. The provisions of this
> Agreement shall be severable. If any portion of this Agreement is held to be
> invalid or unenforceable, it shall not affect the remaining portions of this
> Agreement. This Agreement may be modified by a court or an arbitrator to
> render it enforceable.

> [ . . . ]

*Id.* (quoting Docket No. 76-1, Ex. 1). On June 30, 2020, Defendants filed their Motion to

Dismiss the Amended Complaint or, in the Alternative, to Stay Litigation Pending

Individual Arbitration, arguing that the parties' arbitration employment agreement

mandated the dismissal of Ms. Rodgers-Rouzier's claims under the Federal Arbitration

Act ("FAA").[2] Defendants argued that the Arbitration Agreement "prohibits Ms.

Rodgers-Rouzier from pursuing her FLSA claims in this court." *Id.* at 4. "Alternatively,

Defendants request[ed] an order staying Plaintiffs' collective action claims pending the

completion of Ms. Rodgers-Rouzier's personal arbitration claims." *Id.*

We ultimately denied this motion, after concluding that Ms. Rodgers-Rouzier

qualified as a "seaman" under the FAA and therefore could not be compelled to arbitrate

---

[2] Defendants' initial Motion to Dismiss the Complaint or, in the Alternative, Stay Litigation
Pending Individual Arbitration was denied as moot because it was filed prior to Ms. Rodgers-
Rouzier's submission of an Amended Complaint. Docket No. 97, at 1 n.1.

under this statute. *Id.* at 10. "In so ruling, we examined whether arbitration should be compelled under the FAA and we did not consider Defendants' separate argument that Ms. Rodgers-Rouzier may be compelled to arbitrate under state law if she is determined to be beyond the reach of the FAA because this argument was not raised in Defendants' motion to dismiss or the corresponding briefing and was addressed for the first time only in Defendants' subsequent request to submit additional authority." Docket No. 138, at 2 n.2. Because the issue of enforceability under Indiana law was not properly before the Court at that time, our order denying the initial Motion to Dismiss focused only "on the narrow federal issue raised in Defendants' [first] motion to dismiss." *Id.*

On March 31, 2021, Ms. Rodgers-Rouzier moved for conditional certification of a proposed collective action and notice to a defined group of "service employees," pursuant to 29 U.S.C. § 216(b). "Defendants object[ed] to the conditional certification and notice on the grounds that virtually all of its employees are subject to mandatory arbitration agreements and, as a result, are contractually foreclosed from participating in this lawsuit." *Id.* Specifically, "Defendants claim[ed] that nearly all of the Putative Collective Members have entered into mandatory arbitration agreements subject to Indiana law and thus should not be included in the group who would otherwise receive Plaintiff's proposed step one notice."[3] *Id.* at 4. In other words, "Defendants' argument that the

---

[3] In ruling on Plaintiff's Motion for Step One Notice, we explained that "[t]he parties dispute whether state or federal law governs the arbitration agreements at issue, but the parties do not appear to contest that, if state law governs, Indiana law should apply to the extent that federal law is inapplicable. We agree that Indiana law appears to apply here." Docket No. 138, at 4 n.3.

proposed collective action members have signed arbitration agreements compelling arbitration under state law [was] now properly before us." *Id.* at 2 n.2.

In ruling on the Motion for Step One Notice, we began our analysis by explaining that the "exemption of Ms. Rodgers-Rouzier as an exempted 'seaman' under the FAA does not preclude a determination that state law may require Ms. Rodgers-Rouzier and other similarly situated employees to individually arbitrate their claims pursuant to the parties' common arbitration agreements." *Id.* at 3 (citing *Sherwood v. Marquette Transp. Co., LLC*, 587 F.3d 841, 843 (7th Cir. 2009)) (citations omitted) ("[P]rovisions for alternative dispute resolution may be enforced as contracts under state law, even if the provisions are outside the Federal Arbitration Act's scope."). "This is true 'even when the contract says that the Federal Arbitration Act applies and mentions no other law—if the federal act doesn't apply, the agreement to arbitrate remains viable, and the only question becomes what state's law applies to the contract to arbitrate.'" *Id.* (quoting *Atwood v. Rent-A-Center E., Inc.*, 2016 WL 2766656, at *3 (S.D. Ill. May 13, 2016)). "Because statutory exemption questions relate 'to the Court's ability to employ the federal statute, and not to the underlying arbitration agreement's validity,' we next look to the applicable state law to determine whether the parties' arbitration agreements are valid." *Id.*

We next considered Defendants' arguments regarding the mandatory arbitration agreements entered into by the Putative Collective Members and their validity under Indiana law. We explained that the Seventh Circuit has provided the appropriate analytical framework in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020),

"where, as here, 'a defendant opposes the issuance of notice by asserting that proposed notice recipients entered mutual arbitration agreements.'" Docket No. 138, at 5. In such circumstances, the trial court is directed to take the following specific steps:

> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.
>
> But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity.

*Id.* (quoting *Bigger*, 947 F.3d at 1050). We found that Ms. Rodgers-Rouzier had clearly contested the validity of the arbitration agreements. *Id.* "Thus, before FLSA notice can be approved and/or sent to the Putative Collective Members, *Bigger* requires a determination of the arbitration agreements' application and validity under Indiana law." *Id.*

Relying on *Bigger*, we then explained that "Defendants carry the evidentiary burden in this circumstance: '[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice.'" *Id.* (quoting *Bigger*, 947 F.3d at 1050). At that point, however, Defendants had "submitted only the declaration from American Queen Steamboat Operating Company LLC's Vice President of Human Resources, Christina Hobbs, which states that '505 out of 516

"service employees" (as defined by Plaintiff) that were employed in 2020 and all but one of the individuals who have filed consents in this action signed an Arbitration Agreement.'" *Id.* (quoting Docket No. 117-1, at ¶ 23). We concluded that "Ms. Hobbs's declaration is insufficient under *Bigger*, which requires more than a generalized, blanket statement that alleged arbitration agreements exist for unidentified employees." *Id.* at 5−6 (citing *Bigger*, 947 F.3d at 1051). "For each employee it seeks to exclude, Defendants must provide evidence of the individual's signed arbitration agreement to establish both its existence and validity, allowing the Court to determine whether each such agreement precludes Plaintiff from notifying the respective employee of this pending litigation." *Id.* at 6. Accordingly, we denied Ms. Rodgers-Rouzier's Motion for Step One Notice without prejudice to refiling, once the steps prescribed in our order had been accomplished. *Id.*

Thereafter, Defendants filed their Renewed Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Stay Litigation Pending Individual Arbitration, arguing that the Arbitration Agreement is enforceable under Indiana law. This Renewed Motion is now before the Court for decision.

## II.    STANDARDS OF REVIEW

"An arbitration clause is simply a type of forum-selection clause . . . a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3)." Docket No. 97, at 4 (quoting *Johnson v. Orkin*, LLC, 556 F.App'x 543, 544 (7th Cir. 2014)); *see also Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 806 (7th Cir. 2011) ("[W]e have held that a motion to dismiss based on a contractual

arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).") (internal quotations omitted). In ruling on Defendants' Renewed Motion to Dismiss, "we accept as true the well-pled allegations in the complaint." *Id.* "However, we are 'not obligated to limit [our] consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings.'" Docket No. 97, at 4 (quoting *Faulkenberg*, 637 F.3d at 809−10). "It is thus appropriate for the court to consider the evidence that the parties have submitted in conjunction with their legal arguments, including the Arbitration Agreement." *Id.* (quoting *Faulkenberg*, 637 F.3d at 809−10); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (explaining that documents attached to the complaint and motions to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (internal citations and quotations omitted)); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809-10 (7th Cir. 2016).

### III.   LEGAL DISCUSSION AND DECISION

In their Renewed Motion to Dismiss, Defendants argue that "the Arbitration Agreement between Plaintiff and Defendants is a valid and enforceable agreement under Indiana law and the arbitration procedures agreed to by the parties provide the exclusive remedy for the claims that Plaintiff has asserted in her Amended Complaint," and, consequently, Ms. Rodgers-Rouzier's Amended Complaint "must be dismissed and she must be compelled to utilize the procedures set forth in the Arbitration Agreement should she desire to continue pursuing her claim against Defendants." Docket No. 152, at 6. Defendants cite Indiana's strong policy favoring enforcement of arbitration agreements,

noting that the parties have entered into an enforceable arbitration agreement under Indiana law, that the agreement is not unconscionable, and that Ms. Rodgers-Rouzier's claim is covered by the agreement to arbitrate. "Alternatively, Defendants request the Court to stay Plaintiff's individual claims pending resolution of the claims in individual arbitration pursuant to the parties' Arbitration Agreement." *Id.* at 11.

In opposition, Ms. Rodgers-Rouzier argues that Defendants' Renewed Motion to Dismiss is barred by Federal Civil Procedure Rule 12(g)(2) and should not be considered on its merits because the motion is in truth an untimely motion to reconsider. Further, she contends that Defendants have waived their contractual right to insist on arbitration of a dispute, and that the Arbitration Agreement—with the FAA provision severed—cannot be enforced because it now lacks provisions covering the selection of governing law and an unambiguous selection of an arbitrator. We address the parties' respective arguments in turn below.

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(g)(2)

We begin with Ms. Rodgers-Rouzier's argument that Defendants' Renewed Motion to Dismiss is barred by Federal Civil Procedure Rule 12(g)(2). Under this rule, a party making a Rule 12 motion "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). This rule "does carve [out] an exception that allows parties to seek dismissal at any time on the grounds referenced in Rules 12(h)(2) and (3), but those grounds—failure to state a claim for relief, failure to join a person required under Rule

19(b), failure to state a legal defense, and lack of subject matter jurisdiction—are not implicated here." *Johnson v. United Airlines*, 2013 WL 323404, at *2 (N.D. Ill. Jan. 25, 2013). Ms. Rodgers-Rouzier contends that Defendants failed to raise their argument that the Arbitration Agreement can be enforced under Indiana law in their previous motions to dismiss, and therefore their Renewed Motion to Dismiss is barred, pursuant to Rule 12(g)(2). Continuing, she maintains that "courts in this circuit regularly hold that a party that fails to raise an available defense under Rule 12(b)(3) in a motion to dismiss is estopped from raising that defense in a subsequent motion." Docket No. 156, at 3. However, the cases Ms. Rodgers-Rouzier relies on for this proposition do not involve circumstances analogous to the present case—that is, none of the cases involves a defendant who raised an incorrect venue argument at the outset but are now identifying a new and different body of law as the basis for such argument, which is the situation before us here.[4]

---

[4] Ms. Rodgers-Rouzier cites only two cases from within our circuit, along with two cases from other jurisdictions. In *Johnson v. United Airlines, Inc.*, the defendants filed a motion under Rule 12(b)(6), and after the court ruled on the Rule 12(b)(6) motion, the defendants filed a motion for dismissal for improper venue under Rule 12(b)(3). 2013 WL 323404 at *2. The district court in *Johnson* found that the defendants had waived their improper venue argument by not raising it along with their initial Rule 12(b)(6), but still transferred the case for convenience pursuant to 28 U.S.C. § 1404(a). *Id.* at *2, *7. In *Killian v. Concert Health Plan*, the district court concluded that the defendant had waived its opportunity to file a motion to dismiss under Rule 12(b)(3) for improper venue because it failed to include these arguments in its initial Rule 12(e) motion. 2008 WL 2561218, at *1 (N.D. Ill. June 24, 2008). As for the two cases outside our circuit, they involve defendants who failed entirely to raise a venue argument in their initial responsive pleading. *See T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, 2018 WL 355139, at *3 (D.N.J. Jan. 9, 2018) (involving a defendant who made a motion to strike portions of a complaint and thereafter moved to dismiss under Rule 12(b)(3)); *Realtime Data LLC v. Carbonite, Inc.*, 2017 WL 4693970, at *1 (E.D. Tex. July 11, 2017) (involving a defendant who made a Rule

Defendants, meanwhile, cite the holding in *Scan Top Enterprise Co., Ltd. v. Winplus North America, Inc.*, 2016 WL 910502 (N.D. Ill. Mar. 9, 2016), in which the defendants initially moved to dismiss the complaint based on an arbitration clause, but "it did so pursuant to the improper rule: namely, Rule 12(b)(6) instead of Rule 12(b)(3)." *Id.* at *2 n.3. The defendants then moved to dismiss the complaint again, this time pursuant to Rule 12(b)(3), arguing that the valid arbitration clause mandated the dismissal of the lawsuit. There the court found that the defendants' "objection to venue was not waived by its failure to properly frame the issue under Rule 12(b)(3)" because the defendant did raise its objection to venue in its initial motion; it simply did so under the improper rule. *Id.* (citing *Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons, Co.*, 2005 WL 1862631, at *4 (W.D. Tex. July 8, 2005) (holding party's venue challenge not waived where it was brought under Rule 12(b)(6) instead of Rule 12(b)(3)). We find the *Scan Top* case distinguishable from the circumstances before us here: whereas the defendant in *Scan Top* made a technical pleading error, Defendants have identified an entirely new legal basis for their improper venue argument, having lost on their initial theory that the Arbitration Agreement was enforceable under the FAA.

A closely analogous case provides persuasive guidance to us here. In *Saxon v. Southwest Airlines Co.*, the plaintiff was employed as an airport ramp supervisor for the defendant, Southwest Airlines. 2023 WL 2456382, at *1 (N.D. Ill. Mar. 10, 2023). As a

---

12(b)(6) motion to dismiss, and later moved to dismiss under Rule 12(b)(3)). We thus find Ms. Rodgers-Rouzier's reliance on these cases to be inapposite.

condition of this employment, the plaintiff signed an arbitration agreement that required her to individually arbitrate any and all claims related to her employment with Southwest and contained a provision stating that the arbitration agreement was governed by the FAA. *Id.* at *1 n.1. Nonetheless, the plaintiff filed a FSLA claim in federal court on behalf of herself and a class of similarly situated individuals. *Id.* at *1. Southwest initially moved to dismiss under Rule 12(b)(3), or to stay the case in favor of arbitration, arguing that the FAA required the plaintiff to arbitrate her claims and that a federal court was an improper venue for the suit. *Id.* The plaintiff argued that she was exempt from arbitration under Section 1 of the FAA, which provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *Id.* (citing 9 U.S.C. § 1). Following completion of discovery on the issue, the district judge ruled that the plaintiff was not exempt and was required to arbitrate her claims. *Id.*

The plaintiff appealed that decision to the Seventh Circuit, which ultimately held that the plaintiff qualified for the FAA exemption. *Id.* at *2 (citing *Saxon v. Sw. Airlines Co.*, 993 F.3d 492 (7th Cir. 2021)). "Upon remand, the parties filed motions to compel arbitration, strike collective allegations, and toll the statute of limitations." *Id.* Southwest concurrently appealed the Seventh Circuit decision to the Supreme Court, which granted *certiorari*. In the interim, the district judge dismissed the motions with leave to refile instanter after the Supreme Court handed down a decision in the case. In June of 2022, the Supreme Court affirmed the Seventh Circuit's opinion in *Southwest Airlines Co. v.*

*Saxon*, 142 S. Ct. 1783, 213 L. Ed. 2d 27 (2022). One month later, the parties filed their

renewed motions in the district court. In Southwest's renewed motion to compel

arbitration, it argued that despite the Supreme Court's ruling, the plaintiff was still

required to arbitrate her claims; but Southwest now argued that arbitration was required

under the Illinois Uniform Arbitration Act. *Saxon*, 2023 WL 2456382 at *2. The plaintiff,

however, maintained that Southwest had waived the right to arbitrate under Illinois law

because Southwest did not raise this argument in its initial motion to compel arbitration.

Because Southwest originally filed its motion to dismiss under Rule 12(b)(3) to compel

arbitration under only the FAA, the district court agreed with the plaintiff that this

original motion "lack[ed] any specific request to compel arbitration under the [Illinois

Uniform Arbitration Act]." *Id.* "Therefore, had Southwest again moved to dismiss the

case pursuant to 12(b)(3), this argument would be waived." *Id.* However, as the district

court explained, "Southwest ha[d] not brought a 12(b)(3) motion," but instead it "brought

a motion to compel arbitration and stay the case under the IUAA." *Id.* Thus, as

determined by the district court, Rule 12(g) did not preclude Southwest's opportunity to

renew its motion to compel arbitration under Illinois law.

Here, Defendants have moved to dismiss under Rule 12(b)(3) and, in the alternative,

to compel arbitration under Indiana law and stay the case. We conclude that under Rule

12(g), Defendants have waived their argument under Indiana law as to their Rule 12(b)(3)

argument—the purpose of Rule 12(g) is to prevent Defendants from being able to file a

motion to dismiss on one ground (improper venue under the FAA), lose on this ground,

and then file another motion to dismiss on another ground (improper venue under Indiana arbitration law). *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) ("The policy behind Rule 12(g) is to prevent piecemeal litigation in which a defendant moves to dismiss on one ground, loses, then files a second motion on another ground."). However, Rule 12(g) has no impact on Defendants' ability to renew its motion to compel arbitration and stay the case under Indiana law. Accordingly, we deny Defendants' motion insofar as it seeks dismissal under Rule 12(b)(3) but will nonetheless proceed to consider whether Defendants have successfully moved to compel Ms. Rodgers-Rouzier to arbitrate her claims and stay the case under Indiana law.

### B. UNTIMELY MOTION TO RECONSIDER

Ms. Rodgers-Rouzier also argues that Defendants are essentially asking for a reconsideration of our order denying their second Motion to Dismiss, and a "motion to reconsider 'is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" Docket No. 156, at 3 (quoting *Duvall v. Burkett*, 2022 WL 123807, at *1 (S.D. Ind. Jan. 13, 2022) (Barker, J.)). In *Duvall*, however, we were considering a litigant's motion to reconsider that "mostly rehashe[d] her attempts to exhaust her administrative remedies and present[ed] arguments the Court previously rejected." 2022 WL 123807 at *3. In denying that motion, we explained that "[a] motion to reconsider is not an avenue to present old arguments that were rejected in the first instance." *Id.* (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269−70 (7th Cir. 1996)).

Ms. Rodgers-Rouzier, however, has not pointed the Court to any authority supporting her contention that Defendants' Renewed Motion should be construed as a motion to reconsider, nor any authority to support the proposition that Defendants are prohibited from renewing a motion to compel arbitration after correcting earlier deficiencies.

The Fourth Circuit considered renewed motions to compel arbitration and stay further proceedings in which defendants had corrected deficiencies identified in the district court's initial denial of the motions to compel arbitration and stay the proceedings. *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 715 (4th Cir. 2015). The plaintiff urged the district court to construe these renewed motions as motions for reconsideration and deny them because the court had already "fully and finally decided" the arbitration issues in the initial motions. *Id.* at 711. The district court agreed, noting that it had previously denied the motions to compel arbitration, and observed that the defendants had "offered no legal basis to revisit this previously decided issue." *Id.* at 712. The Fourth Circuit, however, reversed the district court's decision not to consider the renewed motions on the merits, explaining that "no authority—not the FAA, the Federal Rules of Civil Procedure, or any other source of law of which we are aware—limits a party to only one motion" to compel arbitration. *Id.* at 715. *See also Mason v. Midland Funding LLC*, 2021 WL 3017990, at *4 n.5 (N.D. Ga. Mar. 23, 2021) ("This Court rejects Plaintiff's argument that the Renewed Motions to Compel Arbitration may not be considered. First, there is no federal procedural rule prohibiting the filing of renewed motions, and [the prior order] did not specifically indicate that the previous motions were being dismissed with prejudice.

16

Additionally, courts in the Eleventh Circuit have considered these renewed motions to compel arbitration in similar circumstances."). The Fourth Circuit concluded that "because the Renewed Motions presented different issues than did the Initial Motions, the district court could not have relied on the law of the case doctrine to deny the Renewed Motions." *Dillon*, 787 F.3d at 715. Courts in our circuit likewise take up renewed motions to compel arbitration on the merits, without construing them as motions for reconsideration, where the renewed motions correct earlier deficiencies or raise new grounds for compelling arbitration. *See Saxon*, 2023 WL 2456382.

We reject Ms. Rodgers-Rouzier's argument here for the same reason: she has identified no federal procedural rule, nor any Indiana authority to support her contention that Defendants are prohibited from filing a renewed motion to dismiss. Our prior order not only was entered without prejudice, but we stated explicitly that we had refrained from ruling on whether the Arbitration Agreement was enforceable under Indiana law because it had not been properly briefed at that time. Moreover, we have identified Indiana precedent that explicitly contemplates motions to compel arbitration being properly renewed. In *Whitesell Precision Components, Inc. v. Autoform Tool & Mfg., LLC*, the Indiana Court of Appeals concluded that "genuine issues of material fact remain on the threshold issue of which party's terms and conditions apply to the parties' relationship, and therefore we agree with the trial court that [the moving party] has not, at this procedural juncture, met its burden of proving the existence of an enforceable contract between the parties calling for arbitration." 2019 WL 2588359, at *5 (Ind. Ct.

17

App. 2019). "Obviously," as the Court of Appeals explained, the moving party "may renew its arbitration motion upon resolution of the foregoing contract issues." *Id.* at *5 n.5. In sum, we find no legitimate reason to construe Defendants' Renewed Motion as a motion to reconsider, nor any convincing reason why we should not address this Renewed Motion and its new basis for compelling arbitration.

### C. WAIVER OF ARBITRATION ARGUMENT

Ms. Rodgers-Rouzier includes a more general waiver argument, as well, arguing that Defendants have waived their contractual right to insist on arbitration because of their lack of diligence in seeking arbitration. Ms. Rodgers-Rouzier relies on two cases— *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022) and *Breedlove v. Santander Consumer USA, Inc.*, 2021 WL 3879070 (S.D. Ind. Aug. 26, 2021)—both involving waiver standards under the FAA. Given that the question presented here focuses on Indiana law, we shall conduct our review of the issue of waiver under Indiana law. *Saxon*, 2023 WL 2456382, at *3 (citing *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021)). But even if we were to rely on the cases involving waiver under the FAA, both are readily distinguishable from the case at bar. Under Indiana law, a contractual right to arbitration may, indeed, be waived. *Fin. Center Credit Union v. Rivera*, 178 N.E.3d 1245, 1251 (Ind. Ct. App. 2021) (citing *Welty Bldg. Co. v. Indy Fedreau Co., LLC*, 985 N.E.2d 792, 798 (Ind. Ct. App. 2013)). As Indiana courts have explained:

> In determining if waiver has occurred, courts look at a variety of factors, including the timing of the arbitration request, if dispositive motions have been filed, and/or if a litigant is unfairly manipulating the judicial system by

> attempting to obtain a second bite at the apple due to an unfavorable ruling
> in another forum.

*Id.* (quoting *Finlay Props., Inc. v. Hooiser Contracting, LLC*, 802 N.E.2d 453, 455−56 (Ind. Ct. App. 2003)); *see also JKL Components Corp. v. Insul-Reps, Inc.*, 596 N.E.2d 945 (Ind. Ct. App. 1992), *trans. denied*; *Aetna Cas. & Sur. Co. v. Dalson*, 421 N.E.2d 691 (Ind. Ct. App. 1981); *Shahan v. Brinegar*, 390 N.E.2d 1036 (Ind. 1979)). Moreover, "we must resolve any doubts here regarding waiver of the right to arbitration *against* finding such a waiver." *Rivera*, 178 N.E.3d at 1251 (emphasis added) (quoting *Welty Bldg. Co.*, 985 N.E.2d at 802−03).

The Defendants' conduct under review here is vastly different from that described in cases in which courts have found waiver. For example, in *Tamko Roofing Products, Inc. v. Dilloway*, the Indiana Court of appeals found waiver when a party waited until after the opposing party had presented all his evidence at trial to move for the first time to compel arbitration. 865 N.E.2d 1074, 1079 (Ind. Ct. App. 2007). In *Rivera*, the Indiana Court of Appeals found a defendant had waived its contractual right to arbitration after the defendant had answered the complaint and filed for summary judgment. *Id.* at 1252. The Court in *Rivera* relied, in part, on the Seventh Circuit's decision in *St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.*, in which the panel found waiver where the party requesting arbitration waited ten months after the commencement of lawsuit to request arbitration and did not request arbitration until after the party had lost on its motion for summary judgment. 969 F.2d 585 (7th Cir. 1992). Conversely, in *Stardust Ventures, LLC v. Roberts*, the Indiana Court of Appeals found no waiver when a party's

first substantive pleading was a motion to dismiss and to compel arbitration. 65 N.E.3d 1122, 1129 (Ind. Ct. App. 2016). There, the Court found "there [was] no indication [that the party was] unfairly manipulating the judicial system" like the plaintiffs in *Aetna Casualty & Surety Co. v. Dalson*, who had consistently resisted arbitration and only when an unfavorable judgment was entered against them at trial did they seek to compel arbitration, or the parties in *Shahan v. Brinegar*, who formally requested the trial court to order arbitration only after the trial court had already construed the underlying agreement and made its award. *Id.* (citing 421 N.E.2d 691, 692–93 (Ind. Ct. App. 1981); 390 N.E.2d 1036, 1041 (Ind. 1979)); *see also Neal v. Purdue Fed. Credit Union*, 201 N.E.3d 253, 260−61 (Ind. Ct. App. 2022).

In the case at bar, we come quickly to the conclusion that Defendants have not waived their contractual right to arbitrate. *See also Bradley v. Menard, Inc.*, 2017 WL 8780318, at *5 (S.D. Ind. Dec. 15, 2017) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("Unlike where a party files a motion for summary judgment, 'it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss.'")). Defendants have sought to enforce their right to arbitrate at every turn in this litigation—they raised it in each of their three motions to dismiss, they included it as an affirmative defense in their answer to the Amended Complaint, they raised the issue in the Case Management Plan, and have raised it in their objection to Ms. Rodgers-Rouzier's Motion for Step One Notice under the FSLA. Even if we had doubts about Defendants' waiver, Indiana law requires us to "resolve any doubts here regarding

waiver of the right to arbitration *against* finding such a waiver." *Rivera*, 178 N.E.3d at 1251 (emphasis added) (quoting *Welty Bldg. Co.*, 985 N.E.2d at 802−03). Having concluded that Defendants have not waived their contractual right to arbitrate under Indiana law, we turn finally to the merits of Defendants' claim to consider whether the Arbitration Agreement is enforceable under the Indiana Uniform Arbitration Act, Ind. Code § 34-57-2-1, *et seq.*

### D. ENFORCEABILITY UNDER INDIANA LAW

"It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements." *Est. of King by Briggs v. Aperion Care*, 155 N.E.3d 1193, 1194 (Ind. Ct. App. 2020) (quoting *Sanford v. Castleton Health Care Ctr.*, LLC, 813 N.E.2d 411, 416 (Ind. Ct. App. 2004)). "Nevertheless, arbitration is a matter of contract, and a party cannot be required to submit to arbitration unless the party has agreed to do so." *Reitenour v. M/I Homes of Ind., L.P.*, 176 N.E.3d 505, 510 (Ind. Ct. App. 2021) (quoting *Homes by Pate, Inc. v. DeHaan*, 713 N.E.2d 303, 306 (Ind. Ct. App. 1999)). In Indiana, a party "seeking to compel arbitration must satisfy a two-pronged burden of proof." *Safety Nat. Cas. Co. v. Cinergy Corp.*, 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005) (citing *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001). "First, the party must demonstrate the existence of an enforceable agreement to arbitrate the dispute." *Id.* (citing *Mislenkov*, 743 N.E.2d at 289). "Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate." *Id.* (citing *Mislenkov*, 743 N.E.2d at 289). "Once satisfied that the parties contracted to submit their

disputes to arbitration, the court is required by [Indiana Uniform Arbitration Act] to compel arbitration.'" *Rivera*, 178 N.E.3d at 1250 (citing *Est. of King*, 155 N.E.3d at 1195); *see also* Ind. Code § 34-57-2-3(a).

Under Indiana law, a contract requires an "offer, acceptance of the offer and consideration." *Reitenour*, 176 N.E.3d at 511 (quoting *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 598 (Ind. 1994)). "If these elements are present, the parties are generally bound by the terms of the agreement." *Id.* (quoting *Straub*, 645 N.E.2d at 598). "Indiana has long recognized the freedom of parties to enter into contracts." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 521 (Ind. 2021) (citing *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995)). "Indeed, we presume that they represent the freely bargained agreement of parties." *Id.* (citing *Fresh Cut*, 650 N.E.2d at 1129). Indiana courts "will thus enforce contracts, so long as they aren't illegal or against public policy." *Id.* (citing *Fresh Cut*, 650 N.E.2d at 1130).

"These basic principles govern arbitration agreements." *Id.* at 522 (citing *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 906 (Ind. 2004)). "So, when two parties enter into a contract that includes an arbitration clause, courts will presume the parties made the agreement willingly." *Id.* (citing *MPACT Constr. Grp*, 802 N.E.2d at 906). Further, "when construing arbitration agreements [under Indiana law], every doubt is to be resolved in favor of arbitration." *Rivera*, 178 N.E.3d at 1250 (quoting *Est. of King*, 155 N.E.3d at 1194). "And, unless something in the arbitration clause is illegal or contravenes public policy, a court will enforce it so long as

the dispute is covered within the broader contract." *Doe*, 160 N.E.3d 522 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 777 (Ind. Ct. App. 2011)). With these legal principles in mind, we turn now to address the parties' respective arguments.

Ms. Rodgers-Rouzier maintains that the Arbitration Agreement is unenforceable under Indiana law because it specifically provides that: "This Agreement and the applicability/construction of any arbitration decision shall be governed by the Federal Arbitration Act."[5] Docket No. 97, at 3. Thus, she contends, Indiana law cannot fill in the gaps when federal law is unenforceable. In response, Defendants cite our prior order, in which we expressly stated that the "exemption of Ms. Rodgers-Rouzier as an exempted 'seaman' under the FAA *does not* preclude a determination that state law may require Ms. Rodgers-Rouzier and other similarly situated employees to individually arbitrate their claims pursuant to the parties' common arbitration agreements." Docket No. 138, at 3 (emphasis added). In issuing this ruling, we relied on the authority handed down by the Seventh Circuit's decision in *Sherwood v. Marquette Transportation Co., LLC*, in which the panel held that "provisions for alternative dispute resolution may be enforced as contracts under state law, even if the provisions are outside the Federal Arbitration Act's

---

[5] We reiterate that the provision also states: "The provisions of this Agreement shall be severable. If any portion of this Agreement is held to be invalid or unenforceable, it shall not affect the remaining portions of this Agreement. This Agreement may be modified by a court or an arbitrator to render it enforceable." Docket No. 97, at 3.

scope." 587 F.3d at 843 (citing *Omni Tech Corp. v. MPC Sol. Sales, LLC*, 432 F.3d 797

(7th Cir. 2005); *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).

"[T]he fact that the Federal Arbitration Act doesn't apply only means that its

enforcement mechanisms aren't available, not that the whole dispute can't be arbitrated by

enforcing the contract through another vehicle (like state law)." *Atwood*, 2016 WL

2766656 at *3). "This is true 'even when the contract says that the Federal Arbitration Act

applies and mentions no other law—if the federal act doesn't apply, the agreement to

arbitrate remains viable, and the only question becomes what state's law applies to the

contract to arbitrate.'" Docket No. 138, at 4 (quoting *id.*). Our prior order—and the

relevant precedent upon which we relied—squarely rejects the argument advanced by

Ms. Rodgers-Rouzier. *See Land v. Int'l Bus. Machines Corp.*, 108 F. Supp. 3d 632, 640

(S.D. Ind. 2015) ("The doctrine of law of the case is a rule of practice under which … a

decision on an issue of law made at one stage of the case becomes binding precedent to

be followed in successive stages of the same litigation.") (internal quotation marks and

citation omitted). "Because statutory exemption questions relate 'to the Court's ability to

employ the federal statute, and not to the underlying arbitration agreement's validity,' we

next look to the applicable state law to determine whether the parties' arbitration

agreements are valid." *Id.* (quoting *Atwood*, 2016 WL 2766656 at *1). Here, despite the

dispute between the parties over whether state or federal law governs the arbitration

agreements at issue, they have not contested that, if state law governs, Indiana law should

apply to the extent that federal law is inapplicable. *Id.* at 4 n.3. We agree that Indiana law applies here. *Id.*

Ms. Rodgers-Rouzier does not dispute that she executed the Arbitration Agreement, or that any of the three essential elements of a valid contract—offer, acceptance of the offer and consideration—was lacking. She also does not dispute that if held to be enforceable, her claims are of the type covered by the Arbitration Agreement. Instead, she argues that the two of the Arbitration Agreement's provisions should be deemed unenforceable and, because these defects cannot be severed, the entire Agreement is unenforceable. In advancing this contention, she fails to take into account the Arbitration Agreement's severability provision as well as well-established precedent under Indiana law that holds that when a contract contains an unenforceable provision which can be eliminated without frustrating the contract's basic purpose, courts will enforce the remainder of the contract. *See Hemingway v. Scott*, 66 N.E.3d 998, 1004 (Ind. Ct. App. 2016) (citing *Lee v. State*, 816 N.E.2d 35, 39 (Ind. 2004)).

Nonetheless, Ms. Rodgers-Rouzier challenges Paragraph 2 of the Arbitration Agreement, which provides that "[t]he arbitration shall be conducted under the rules and procedures of the American Arbitration Association, Judicial Arbitration and Mediation Services or another arbitration service selected by the Company." Docket No. 76-1, Ex. 1. She maintains that "[t]his clause provides Defendants with complete and unfettered discretion to select which arbitral forum applies and which rules govern within that forum." Docket No. 81, at 12. As support for this argument, Ms. Rodgers-Rouzier relies

entirely on our decision in *Geiger v. Ryan's Fam. Steak Houses, Inc.*, describing that decision as identical to the situation here. 134 F.Supp.2d 985 (S.D. Ind. 2001) (Barker, J.).

In *Geiger*, however, we were considering an arbitration agreement in which the plaintiff's employer had contracted exclusively with one company—Employment Dispute Services, Inc. ("EDSI")—for the provision of arbitration services. We agreed with the rulings of other courts that there was a strong potential for bias in EDSI's selection of the arbitration panel, given the company's financial interest in maintaining the arbitration service contracts with employers and, "coupled with the burdensome fees structure, [we concluded] that a plaintiff could well be prevented from pursuing her statutory claim in the arbitration forum." *Id.* at 997. These were not, however, the only reasons we concluded that the arbitration agreement could not require either of the two plaintiffs to submit to arbitration; we also determined that we were well-advised to set aside the arbitration agreement as an " unconscionable contract based on its contents, its potential for bias in the arbitral forum, the disparate bargaining power of the parties, and the plaintiffs' lack of understanding of the terms of the agreement." *Id.* There, plaintiffs had satisfied the steep climb to establish unconscionability, which is when it is "such that no sensible man not under delusion, duress, or in distress would make [it], and such as no honest and fair man would accept [it]." *Id.* (quoting *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971)). Our decision in *Geiger* obviously involved vastly different

circumstances than those presented here, making it almost entirely irrelevant in resolving the situation we are faced with here.

What is instructive, in contrast, are authorities from the Indiana Court of Appeals and the Indiana Uniform Arbitration Act. In *Geneva-Roth, Capital, Inc. v. Edwards*, the Indiana Supreme Court considered, as a matter of first impression, the question of whether an arbitration agreement fails due to impossibility, if the chosen forum cannot serve as arbitrator, or whether the trial court is obliged to appoint a substitute arbitrator in such case pursuant to Section 5 of the FAA. 956 N.E.2d 1195, 1199 (Ind. Ct. App. 2011). There, the forum-selection clause provided: "any claim, dispute, or controversy . . . shall be resolved by binding arbitration by and under the Code of Procedures of the National Arbitration Forum (NAF) at the time the claim is filed." *Id.* at 1202−03. "The agreement further provided that rules and forms could be obtained from NAF and that all claims shall be filed at any NAF office." *Id.* The Indiana Court of Appeals concluded that, "[a]t a minimum, for the selection of an arbitrator to be 'integral,' the arbitration clause must include an express statement designating a specific arbitrator." *Id.* at 1202. "An express designation of a single arbitration provider weighs in favor of a finding that the designated provider is integral to the agreement to arbitrate." *Id.* Because "NAF as the arbitral forum was integral to the arbitration agreement, and given that the NAF is no longer available to conduct consumer arbitrations, the arbitration provision [was found to be] null and void on grounds of impossibility." *Id.* at 1203; *see also Apex 1 Processing, Inc. v. Edwards*, 962 N.E.2d 663, 667 (Ind. Ct. App. 2012) (same).

Conversely, in *Anonymous, M.D. v. Hendricks*, the Indiana Court of Appeals evaluated an NAF forum-selection clause that "contain[ed] language that [was] conspicuously absent from the agreements in *Geneva–Roth* and *Apex 1*." 994 N.E.2d 324, 330 (Ind. Ct. App. 2013). "Namely, after reciting that NAF was the preferred entity to conduct any arbitration, the agreement goes on to state: 'If the National Arbitration Forum is unwilling or unable to serve or the parties mutually agree not to utilize the National Arbitration Forum for whatever reason, then the parties shall mutually agree on some other Alternative Dispute Resolution Service or method to administer the binding arbitration proceeding.'" *Id.* This sentence "emphatically indicates that the NAF is not integral to the agreement to arbitrate." *Id.* (citation omitted). "In sum," the Court of Appeals found "no reason not to give effect to the plain language of the parties' arbitration agreement, providing for an alternate forum and/or method of arbitration in the event of NAF's unavailability." *Id.* at 331.

In the case at bar, the Arbitration Agreement provides that the arbitration be conducted by the American Arbitration Association, the Judicial Arbitration and Mediation Services, or another arbitration services conducted by the company. Applying Indiana precedent, we conclude that this forum-selection clause is not integral to the Arbitration Agreement because it provides for multiple alternatives. *See also* Ind. Code § 34-57-2-4 ("If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed."). Because the forum-selection clause is not integral to the Arbitration Agreement, the Indiana Uniform Arbitration Act can be used as a mechanism

to appoint a substitute arbitrator in the event of unavailability or potential bias. *Geneva-Roth,* 956 N.E.2d at 1203. Specifically, the Indiana Uniform Arbitration Act provides that "[i]f the method of appointment of arbitrators is not specified in the agreement and can not be agreed upon by the parties, or if agreed method fails or for any reason can not be followed, or if an arbitrator appointed fails or is unable to act and a successor has not been appointed within a reasonable time, the court on application of a party shall appoint one (1) or more arbitrators, who have all the powers of an arbitrator appointed according to the agreement." *Id.* Moreover, Indiana Code section 34-57-2-3(g) provides:

> On application the court may stay an arbitration proceeding on a showing that the method of appointment of arbitrators is likely to or has resulted in the appointment of a majority of arbitrators who are partial or biased in some relevant respect. The court shall then appoint one (1) or more arbitrators as provided in [Indiana Code section 34-57-2-4].

Thus, Ms. Rodgers-Rouzier's argument to the contrary is wholly unpersuasive and we reject it accordingly.

Ms. Rodgers-Rouzier's final challenge to the Arbitration Agreement focuses on Paragraph 4, which sets out her agreement "not to commence any claim hereunder more than six (6) months after the date I knew or should have known of the facts giving rise to the claim, and I agree to waive any statute of limitations to the contrary." Docket No. 76-1, Ex. 1. She interprets Paragraph 4 to impose a one-sided limitation on her claims, with no corresponding limitation on Defendants'. This argument fails to take into account Paragraph 5, however, which expressly incorporates the terms contained in Paragraph 4 and applies them to Defendants' potential claims against Ms. Rodgers-Rouzier.

29

Moreover, "[i]t is clear under Indiana law that 'the doctrine of mutuality of obligation does not require that every duty within an agreement be based upon a corresponding obligation.'" *BRC Rubber & Plastics, Inc. v. Cont. Carbon Co.*, 900 F.3d 529, 538 (7th Cir. 2018) (quoting *Terre Haute Reg'l Hosp. v. El-Issa*, 470 N.E.2d 1371, 1377 (Ind. Ct. App. 1984); *see also Conner v. Instant Cash Adv.,* 2003 WL 446197, at *4 (S.D. Ind. Feb. 20, 2003) (Barker, J.). "Certainly a contract does not become unenforceable merely because the obligations of the parties differ in quality or quantity." *Terre Haute Reg'l Hosp.*, 470 N.E.2d at 1377.

Ms. Rodgers-Rouzier maintains that Paragraph 4 is, in any event, an unenforceable time limitation on her claims, while acknowledging that "[o]utside of the FLSA context, the general rule is that 'contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.'" Docket No. 81, at 14 (quoting *Johnson v. W. & S. Life Co.*, 2014 WL 4370772, at *5 (S.D. Ind. Sept. 3, 2014) (Barker, J.)). "While courts will uphold limitations on other employment claims such as Title VII, courts strike down such limitations when applied to FLSA claims." *Id.* (citing *Johnson*, 2014 WL 4370772, at *5). Ms. Rodgers-Rouzier has provided no persuasive authority for her contention that such time limitations are categorically prohibited with respect to FSLA claims. Our decision in *Johnson v. Western & Southern Life Co.* certainly offers no such support. In *Johnson*, we explained that "Indiana law generally holds that 'contractual limitations shortening the time to commence suit are valid, at least so long as a reasonable time is afforded.'" 2014 WL 4370772, at *5. "Courts assessing six-month

limitations periods for claims similar to those brought by [the plaintiff] have found the period to be reasonable." *Id.* (citing *Taylor v. W. and S. Life Ins. Co.*, 966 F.2d 1188, 1206 (7th Cir. 1992)). Thus, we held that the six-month limitations period contained in the employment agreement at issue was reasonable and served as a bar to plaintiff in bringing her Title VII claims. *Id.*

The other authorities Ms. Rodgers-Rouzier relies upon are no more instructive in analyzing the provisions currently before us. In *Castellanos v. Raymours Furniture Co., Inc.*, a New York district court concluded that an arbitration agreement's six-month limitation on the plaintiff's FSLA claim was unenforceable. 291 F.Supp.3d 294, 298−302 (E.D.N.Y. 2018). However, the district court was operating under the requirements of the FAA, under which courts are mandated to "enforce arbitration agreements according to their terms holds true for claims that allege a violation of a federal statute, unless [it] has been overridden by a contrary congressional command in the at-issue federal statute." *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation marks omitted)). "Additionally, federal courts have developed a 'judge-made exception' to the FAA's mandate, which 'allow[s] courts to invalidate agreements that prevent the effective vindication of a federal statutory right.'" *Id.* (quoting *Sutherland v. Ernst & Young*, 726 F.3d 290, 298 (2d Cir. 2013). The Supreme Court has "clarified that the effective vindication exception applies only where an agreement operates as a 'prospective waiver of a party's right to pursue statutory remedies.'" *Id.* (quoting *Italian*

*Colors*, 570 U.S. at 236)). The *Castellanos* court found the time limitation was unenforceable based on these particular aspects of the FAA.

Ms. Rodgers-Rouzier successfully argued in her prior filings with the court that she cannot be compelled to arbitrate under the FAA. To attempt to rely on the substantive protections offered under the Act at this juncture is both unavailing and unbecoming. Ms. Rodgers-Rouzier has not identified, nor has the Court been able to find, any authority under Indiana law for her assertion that arbitration agreements cannot limit the time period within which to bring claims under the FSLA. Accordingly, we reject her theory, invoking again the operative principle that, "when construing arbitration agreements [under Indiana law], every doubt is to be resolved in favor of arbitration." *Rivera*, 178 N.E.3d at 1250 (quoting *Est. of King*, 155 N.E.3d at 1194).

Our review of the facts and relevant law allows us to conclude that the parties reached an agreement as reflected in their contract to submit their dispute to arbitration. We are therefore "required by statute to compel arbitration." *Destination Yachts,* 113 N.E.3d at 653 (Ind. Ct. App. 2018) (quoting *Capitol Const. Servs*, 946 N.E.2d at 628 (Ind. Ct. App. 2011)); *see also* Ind. Code § 34-57-2-3(a). That said, the Indiana Uniform Arbitration Act "does not specify the proper disposition of the litigation upon such a determination." *Destination Yachts*, 113 N.E.3d at 653 (quoting *Ind. CPA Society, Inc. v. GoMembers, Inc.*, 777 N.E.2d 747, 750 (Ind. Ct. App. 2002)). Indiana courts have routinely held that "[a] stay, rather than a dismissal, is perhaps favorable where certain claims remain that are not subject to arbitration, but dismissal is proper where all issues raised must be

submitted to arbitration." *Pekin Ins. Co. v. Hanquier*, 984 N.E.2d 227, 231 (Ind. Ct. App. 2013) (quoting *Koors v. Steffen*, 916 N.E.2d 212, 218 (Ind. Ct. App. 2009)). Accordingly, because the entirety of Ms. Rodgers-Rouzier's lawsuit must be submitted to arbitration under the parties' Arbitration Agreement, we shall dismiss this lawsuit without prejudice.

We acknowledge that in excess of one hundred Putative Collective Members have at this time already opted-in to this lawsuit. However, because the Collective Action has never been certified, indeed, notice has never issued, these individuals are not actually party-plaintiffs to this litigation. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 ("Under the FLSA, by contrast, 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action."); *Beery v. Quest Diagnostics, Inc.*, 2013 WL 3441792, at *3 (D.N.J. Jul. 8, 2013) ("The four individuals who filed consents-to-join without conditional certification or court ordered notice are not party-plaintiffs"); Cooper v. Terminix Int'l Co., 2018 WL 1998973, at *6 (S.D. Tex. Apr. 11, 2018) ("The court has not granted conditional certification of a collective action in this case. The only named plaintiff is Cooper. While other individuals have filed form consent forms to opt-in to a collective action, there is not currently any collective action to join. The court agrees with the court in *Beery* that those who filed consent-to-join forms are not yet parties to this case. . . . Therefore, having recommended dismissal of the claims of the only named plaintiff in this case, the court also recommends dismissal of all claims of individuals who have filed consent form"); *Alvarez v. City of Chi.*, 605 F.3d 445, 450 (7th Cir. 2010) (explaining that "when a collective action is decertified, it

reverts to one or more individual actions on behalf of the named plaintiffs"); *Espenscheid v. Direct Sat USA, LLC* 688 F.3d 872, 877 (7th Cir. 2012) (explain that upon decertification of an FSLA collective action, "the unnamed class members go poof and the named plaintiffs' claims revert to being individual claims."). Ms. Rodgers-Rouzier thus remains the only plaintiff in this litigation; nothing, of course, prevents other, potential collective members from suing/arbitrating in their own right.

## IV.    CONCLUSION

Accordingly, Defendants' Motion to Dismiss or, in the Alternative, to Stay Litigation Pending Individual Arbitration [Docket No. 151] is **DENIED IN PART** and **GRANTED IN PART**. Plaintiff is hereby **COMPELLED** to arbitrate her entire dispute pursuant to the parties' Arbitration Agreement. All pending motions [Docket No. 144; Docket No. 148; Docket No. 155] are **DISMISSED AS MOOT**. Pursuant to Indiana law, we **DISMISS** this action without prejudice. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date:    3/31/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Sarah Arendt
WERMAN SALAS P.C.
sarendt@flsalaw.com

Augustus S. Herbert
Gray Ice Higdon, PLLC
aherbert@grayice.com

Robert P. Herre
rpherre@aol.com

Bobby R. Miller, Jr.
MILLER HAHN, PLLC
bmiller@millerlaw-firm.com

Dennis D. Murrell
Gray Ice Higdon, PLLC
dmurrell@grayice.com

Loren T. Prizant
MIDDLETON REUTLINGER
lprizant@middletonlaw.com

Maureen A. Salas
WERMAN SALAS P.C.
msalas@flsalaw.com

Michael Tresnowski
WERMAN SALAS P.C.
mtresnowski@flsalaw.com

Douglas M. Werman
WERMAN SALAS PC
dwerman@flsalaw.com